UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AYELET POTTASH,

               Plaintiff,

                  **MEMORANDUM & ORDER**
      -against-               19-CV-4530-RPK-SJB

HELLO LIVING, LLC, ELI KARP, and MIKE
WOODSON,

               Defendants.
-------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       Plaintiff Ayelet Pottash ("Pottash") brought this action against Defendants Hello Living, LLC ("Hello Living"), Eli Karp ("Karp"), and Mike Woodson ("Woodson") (collectively, "Defendants"), alleging discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act of 1978, New York Labor Law, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (Am. Compl. dated Jan. 15, [2020] ("Am. Compl."), Dkt. No. 21 ¶¶ 1, 295–341). On October 13, 2020, Pottash sought leave to file a Second Amended Complaint. (Notice of Mot. for Leave to Amend the Compl. dated Oct. 13, 2020 ("Mot."), Dkt. No. 37). Defendants oppose. (Mem. of Law in Opp'n of Pl.'s Second Mot. to Amen[d] Her Compl. dated Oct. 21, 2020 ("Opp'n"), Dkt. No. 38). Pottash's motion is granted in part and denied in part: the Court denies leave to add 18 new corporate entities as defendants, but permits an amendment to eliminate the Title VII claims against Karp and Woodson.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pottash is a Jewish woman who lives in Brooklyn, New York. (Am. Compl. ¶ 2). She is a former employee of Hello Living. (*Id.*). Pottash was pregnant when she was hired by Hello Living. (*Id.* ¶¶ 14, 20, 31). She began parental leave several months after the start of her employment, (*id.* ¶¶ 31, 90), and when she returned to work, she was breastfeeding, (*id.* ¶¶ 95–105). Karp is the Chief Executive Officer of Hello Living, and Woodson is the Chief Financial Officer of Hello Living. (*Id.* ¶¶ 4–5). They both supervised Pottash when she worked for Hello Living. (*Id.*).

Pottash alleges that Defendants discriminated against her due to her gender, religion, pregnancy, and because she was breastfeeding and a caregiver; retaliated against her; and wrongfully discharged her. (*Id.* ¶ 8, 302). She details discriminatory comments made by Karp and Woodward, renegued-upon promises regarding paid parental leave and the ability to work from home several days per week, and Defendants' refusal to provide breastfeeding accommodations, among other incidents. (*See, e.g.*, *id.* ¶¶ 18–21, 27–28, 48–55, 71–90, 95–116, 125–140, 191–202, 231–44, 274–90).

Pottash commenced this action on August 6, 2019, (Compl. dated Aug. 6, 2019, Dkt. No. 1), and amended her original Complaint on January 15, 2020, (Am. Compl.). The Amended Complaint asserts seven causes of action and seeks relief for gender, pregnancy, breastfeeding, caregiving, and religious discrimination and unlawful retaliation in violation of Title VII, the Pregnancy Discrimination Act, New York Labor Law, the NYSHRL, and the NYCHRL. (*Id.* ¶¶ 1, 295–341). On September 25, 2020, Defendants filed a motion for a pre-motion conference for leave to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that Pottash's Title VII claims could not be asserted against the individual defendants and that the Court should

2

also dismiss the state law claims asserted against them.  (Defs.' Mot. for Pre-Mot. Conference dated Sept. 25, 2020, Dkt. No. 34).  The Honorable Judge Rachel Kovner denied this motion, finding that such argument would more appropriately be addressed in a motion to dismiss.  (Order dated Oct. 6, 2020).  Pottash also sought a pre-motion conference regarding her anticipated motion to amend the operative complaint, and she stated that she intended to add other corporate defendants.  (Pl.'s Mot. for Pre-Mot. Conference dated Sept. 24, 2020, Dkt. No 33 at 2).  Judge Kovner denied this request and referred the motion to file an amended complaint to the undersigned.  (Order dated Oct. 2, 2020).

Pottash moved for leave to file a Second Amended Complaint on October 13, 2020.  (Mot.).  Pottash seeks to add 18 new corporate defendants (hereinafter, the "new Defendants") and to assert the causes of action under Title VII only against any corporate Defendants.  (Pl.'s Mem. of Law in Supp. of Mot. dated Oct. 13, 2020 ("Mem."), Dkt. No. 37-1 at 4–5; Second Am. Compl. dated Oct. 13, 2020 ("Second Am. Compl."), attached as Ex. 2 to Decl. of Megan S. Goddard, Esq. Accompanying Pl.'s Mot. for Leave to Amend, Dkt. No. 37 ¶¶ 5–22, 314–18, 333–39, 347–53).

<u>DISCUSSION</u>

"Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013) (quoting Fed. R. Civ. P. 15(a)).  "A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days

3

after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Rule 15(a)(2) applies to Pottash's motion because it is her second amendment. It provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* r. 15(a)(2); 6 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1480 (3d ed. 2020) ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."); *CSX Transp., Inc.*, 2013 WL 12329546, at *2.

Federal Rule of Civil Procedure 16 also bears upon whether the Court should grant leave to amend. Rule 16 requires the Court to issue a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (Sotomayor, J.) (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment).

> Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.

*Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's

consent."). "Whether good cause exists turns on the 'diligence of the moving party.'"

*Holmes*, 568 F.3d at 335 (quoting *Grochowski v. Phoenix Constr.*, 381 F.3d 80, 86 (2d

Cir. 2003)). "While the diligence inquiry is the primary consideration, courts may also

consider other relevant factors including whether the proposed amendment would

result in prejudice to defendants." *Mason Tenders*, 318 F.R.D. at 37.

While Rule 16 sets the schedule for amended pleadings to be filed, Rule 15

provides that leave to amend be "freely give[n]." Fed. R. Civ. P. 15(a)(2). That is,

> [i]n the absence of any apparent or declared reason—such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be "freely
> given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Burch v. Pioneer Credit Recovery,*

*Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Delay alone, in the absence of bad

faith or prejudice, is not a sufficient reason for denying a motion to amend." *Duling v.*

*Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010).

"Futility is a determination, as a matter of law, that proposed amendments would

fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules

of Civil Procedure." *Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 560

(E.D.N.Y. 2020) (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25

(2d Cir. 2017)). "Thus, the standard for denying leave to amend based on futility is the

same as the standard for granting a motion to dismiss." *Id.* (quoting *IBEW Loc. Union*

*No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d

383, 389 (2d. Cir 2015)). "If the problems with a claim are substantive rather than the

result of an inadequately or inartfully pleaded complaint, an opportunity to replead

would be futile and should be denied." *Id.* (quoting *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005)).

Pottash contends that the new Defendants may be joined because they are jointly and severally liable for damages under both the single employer and joint employer doctrines. (Mem. at 7–9). Per the Rule 16 schedule, the deadline to join new parties was March 15, 2020. (*See* Disc. Plan Worksheet, Dkt. No. 15; Min. Entry and Order dated Nov. 15, 2019, Dkt. No. 16). Pottash's motion was filed on October 13, 2020. (Mot.). Even assuming that good cause exists to permit an amendment after the deadline to do so has passed, because the amendment would be futile, the motion to add the new Defendants is denied.

Entities that are not direct employers of an individual may still be liable for discrimination, under statutes like Title VII, under the single employer or joint employer theories.[1] *Kology v. My Space NYC Corp.*, 177 F. Supp. 3d 778, 781 (E.D.N.Y. 2016) ("[T]he absence of a direct employment relationship does not bar a Title VII claim, and [ ] liability extends beyond conventional, single-employer situations." (alterations in original) (quoting *Dortz v. City of New York*, 904 F. Supp. 127, 144–45 (S.D.N.Y. 1995))). "[C]ourts construe 'the term "employer" functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of

---

[1] For the purposes of the NYSHRL, the New York Court of Appeals has instructed that Title VII cases and "common-law principles . . . determine who may be liable as an employer under . . . the Human Rights Law, with greatest emphasis placed on the alleged employer's power 'to order and control' the employee in his or her performance of work." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 184–86 (2017) (noting that "the lack of clarity in the Human Rights Law itself certainly permits us to look to title VII cases for guidance").

6

employment.'" *Id.* (quoting *Laurin v. Pokoik*, No. 02-CV-1938, 2004 WL 513999, at *8

(S.D.N.Y. Mar. 15, 2004)).  Under the single employer theory,

> "two nominally separate entities are actually part of a single integrated
> enterprise . . . ."  In such circumstances, of which examples may be parent
> and wholly-owned subsidiary corporations, or separate corporations under
> common ownership and management, the nominally distinct entities can
> be deemed to constitute a single enterprise. . . . [U]nder this theory . . . , an
> employee, who is technically employed on the books of one entity, which is
> deemed to be part of a larger "single-employer" entity, may impose liability
> for certain violations of employment law not only on the nominal employer
> but also on another entity comprising part of the single integrated employer.

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (first alteration

in original) (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)

(citation omitted).

> In a "joint employer" relationship, in contrast, "there is no single integrated
> enterprise.  A conclusion that employers are 'joint' assumes that they are
> separate legal entities, but that they . . . handle certain aspects of their
> employer-employee relationship jointly."  Where this doctrine is operative,
> an employee, formally employed by one entity, who has been assigned to
> work in circumstances that justify the conclusion that the employee is at the
> same time constructively employed by another entity, may impose liability
> for violations of employment law on the constructive employer, on the
> theory that this other entity is the employee's joint employer.

*Id.* (alteration in original) (quoting *Clinton's Ditch Coop. Co.*, 778 F.3d at 137).  Here,

Pottash is proceeding under both theories.

"Whether two entities constitute a 'single employer' is determined by four factors

enumerated by the Supreme Court: (1) interrelation of operations, (2) common

management, (3) centralized control of labor relations, and (4) common ownership."

*Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. High

Performance Floors, Inc.*, 233 F. Supp. 3d 329, 334 (E.D.N.Y. 2017) (citing *Radio &

Television Broad. Technicians Loc. Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S.

255, 256 (1965)); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226–27 (2d Cir.

2014).  "While no single factor is dispositive, [the Second Circuit has] identified control

of labor relations as 'central.'"  *United Union of Roofers, Waterproofers, & Allied*

*Workers Loc. No. 210*, 547 F. App'x at 19 (quoting *Murray v. Miner*, 74 F.3d 402, 404

(2d Cir. 1996)).  "Whether two related entities are sufficiently integrated to be treated as

a single employer is generally a question of fact not suitable to resolution on a motion to

dismiss."  *Brown*, 756 F.3d at 226.  Yet, a plaintiff must still sufficiently allege facts to

support such a relationship.  *E.g.*, *Popat v. Levy*, 253 F. Supp. 3d 527, 540 (N.D.N.Y.

2017) (dismissing, in part, because plaintiff did not sufficiently allege single employer

doctrine); *Rittmeyer v. Advance Bancorp, Inc.*, 868 F. Supp. 1017, 1022–24 (N.D. Ill.

1994) (same).

     Here, Pottash's bare-bones allegations are insufficient—even at the pleading

stage—to infer that the 18 new Defendants and Hello Living should be treated as a single

employer.[2]  Pottash states that each of the 18 new Defendants and Hello Living are

headquartered at the same location, Pottash kept the books for the new Defendants, and

she discussed the new Defendants with Karp and Woodson.  (Second Am. Compl. ¶¶ 4–

23).  She also alleges that:

> [u]pon information and belief, The Corporate Defendants are merely alter
> egos of each other.  Specifically, the[y] share common ownership, and
> transfer funds between personal and corporate accounts, the owners of The
> Corporate Defendants use corporate funds and property for personal use or
> obligations; the corporations are undercapitalized, there is a lack of
> separate corporate formalities, The Corporate Defendants share common
> office space, ownership and employees, including the Plaintiff at all relevant
> times.

---

[2] The Court disregards Defendants' arguments that there is no labor relationship
between Hello Living and the new Defendants because they are based on factual
assertions, namely an affidavit of Defendant Karp, not contained in the proposed
Amended Complaint.  (*See* Opp'n at 8).

(*Id.* ¶ 24).  Merely reciting the elements of the single employer doctrine and stating that

several entities are headquartered at the same address and that Pottash, at times,

discussed and provided work for the new Defendants is not enough from which to infer

that these new Defendants and Hello Living should be treated as single employers.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *McHenry v. Fox News Network, LLC*, No. 19-CV-11294,

2020 WL 7480622, at *19 (S.D.N.Y. Dec. 18, 2020) ("Often, whether a parent entity

exercises sufficient control over a subsidiary such that the two are a single entity is 'a

question of fact not suitable to resolution on a motion to dismiss.'  But a plaintiff must

'do more than simply state legal conclusions and recite the elements of the single

employer standard to survive a motion to dismiss.' . . . '[C]onclusory, *ipse dixit*

assertions' about the degree of control the parent exercised over the subsidiary do not

satisfy the pleading standards as articulated in *Twombly* and *Iqbal*." (second alteration

in original) (first quoting *Brown*, 756 F.3d at 226, then quoting *Fried v. LVI Servs., Inc.*,

No. 10-CV-9308, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011))).  Given the sheer

number of Defendants to be added—18—with no specifics about any of them, it appears

that they were all grouped together based on speculation about their relationship to

Hello Living as opposed to actual investigation and knowledge of facts.  *See Dillard v.*

*Morris Cnty. Prosecutor's Off.*, No. 19-CV-19089, 2020 WL 4932527, at *3 (D.N.J. Aug.

24, 2020) (dismissing discrimination claims against individual defendants for

"impermissible group pleading").

Pottash failed to make any allegations about any of the elements of the single employer test.  There are no specific, non-conclusory facts alleged from which to infer that the new Defendants and Hello Living had interrelated operations, common management, common ownership, or centralized control of labor relations.  Even the conclusory allegations are based upon information and belief.  And even if the conclusory allegations are credited, Pottash misapprehends the single employer test, confusing it with an "alter ego" theory of liability.  (Second Am. Compl. ¶ 24 (referring to "alter egos" and under-capitalization of corporate defendants)).  However, "the two doctrines are 'conceptually distinct.'"  *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 748 (2d Cir. 1996) (quoting *Truck Drivers Loc. Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir. 1991)), *as amended* (May 9, 1996).

> The focus of the alter ego doctrine, unlike that of the single employer doctrine, is on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations."  The single employer doctrine, in contrast, focuses on determining if the entities "are part of a single integrated enterprise," and "is characterized by absence of an arm's length relationship found among unintegrated companies."

*Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds*, 233 F. Supp. 3d at 334 (quoting *Lihli Fashions Corp.*, 80 F.3d at 747–48).  Thus, establishing alter ego liability would not establish that these defendants are all single employers of Pottash.

For these manifold reasons, Pottash cannot amend the operative Complaint to include any of the 18 new Defendants on a single employer theory of liability.  *See, e.g.*, *McHenry*, 2020 WL 7480622, at *19 (dismissing claims as to parent company for failing to allege that the parent company fell under single employer doctrine); *Popat*, 253 F. Supp. 3d at 540 (on motion to dismiss, finding that there were insufficient facts for

10

single employment theory of liability where only factual assertion was that entities were "associated").

      Similarly, Pottash fails to allege facts from which to infer the joint employer theory can expose the new Defendants to liability.  Although the Second Circuit "has not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII," *Arculeo*, 425 F.3d at 199 n.7, it nonetheless acknowledges that the "factors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision,'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (quoting *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013)); *see also Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (in case asserting discrimination in violation of the Americans with Disabilities Act, finding "[a] joint employer relationship may be found to exist [if] there is sufficient evidence that the respondent had immediate control over the other company's employees." (alteration in original) (quoting *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) (per curiam))); *c.f.*, *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003) ("The factors we find pertinent [in analyzing whether an entity was a joint employer under FLSA] . . . listed in no particular order, are (1) whether Liberty's premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to Liberty's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the Liberty Defendants or their agents supervised plaintiffs' work; and (6)

whether plaintiffs worked exclusively or predominantly for the Liberty Defendants."). And "even when a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show 'that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control.'" *Lima v. Addeco and/or Platform Learning, Inc.*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (alteration in original) (quoting *Watson v. Adecco Emp. Servs., Inc.*, 252 F.Supp.2d 1347, 1356–57 (M.D. Fla. 2003)), *aff'd*, 375 F. App'x 54 (2d Cir. 2010).

Pottash has alleged no facts to suggest that the new Defendants had any control over Hello Living's employees, that there was "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" between the new Defendants and Hello Living, *Shiflett*, 601 F. App'x at 30 (quoting *St. Jean*, 963 F. Supp. 2d at 308), or that the new Defendants knew of or should have known of the alleged discrimination.  Therefore, the Court cannot conclude that adding these new parties is permissible.  *See, e.g.*, *Popat*, 253 F. Supp. 3d at 540 ("It is difficult to interpret Plaintiff's limited factual allegations— that UBNS is 'associated with the University' and is the University's 'clinician care component'—as plausibly suggesting that UBNS played a sufficient role in the employment matters of the University to be considered a joint or single employer.  That is, these allegations do not sufficiently indicate 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision' as needed to plausibly suggest that UBNS acted as a joint employer.").

Pottash believes she can bolster her arguments for the 18 new Defendants' liability through discovery and thus should be granted leave to amend.  (Mem. at 7).  But "[a] complaint cannot go forward based on unsupported allegations, coupled with the hope that something will turn up in discovery." *Barata v. Nudelman, Klemm & Golub,*

12

*P.C.*, No. 13-CV-4274, 2015 WL 733628, at *4 (D.N.J. Feb. 19, 2015).  Thus, the hope that discovery alone will support Pottash's theories of liability is not enough to allow Pottash to add the new Defendants to the case.

To the extent that Pottash seeks to amend the complaint to assert her Title VII claims against Hello Living alone, and thereby dismiss those claims against the individual defendants, the Court finds this is appropriate.

<u>CONCLUSION</u>

For the foregoing reasons, Pottash's motion to file a Second Amended Complaint is granted in part and denied in part.  Pottash may amend the operative Complaint to assert her Title VII claims against Hello Living alone, but may not add the new Defendants as parties.[3]  Pottash shall file the Second Amended Complaint consistent with this Opinion by February 9, 2021.

---

[3] Defendants assert that Pottash's claims against Defendants Karp and Woodson should not remain in the case because the Court lacks supplemental jurisdiction over the state law claims against these individual Defendants.  (Opp'n at 11–12).  This argument is procedurally inappropriate on a motion to amend and, as Judge Kovner stated, would be more appropriate in a motion to dismiss.  (Order dated Oct. 6, 2020 ("To the extent defendants seek dismissal of any state law claims, those arguments would be more appropriately presented in a motion to dismiss.")).  Even still, such an argument would likely fail.  *See, e.g.*, *Briggs v. SCO Fam. of Servs.*, No. 16-CV-3882, 2018 WL 1370268, at *6 n.8 (E.D.N.Y. Feb. 15, 2018) ("The Court recognizes that, in the Second Circuit, no liability can arise against an individual defendant under Title VII unless such individual is the plaintiff's actual employer.  To the extent, however, that Briggs amends her Complaint to assert a viable claim under the NYSHRL over which the Court decides to exercise supplemental jurisdiction, that claim could proceed as to the Individual Defendants." (citation omitted)), *report and recommendation adopted*, 2018 WL 1368032 (Mar. 16, 2018).

SO ORDERED.


_/s/ Sanket J. Bulsara_ February 2, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York